# EXHIBIT A

| SUMMONS IN A CIVIL ACTION | COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER |
|---|---|
| | CLEVELAND, OHIO 44113 |

| CASE NO. CV18902995 | D2 CM | SUMMONS NO. 36329667 |
|---|---|---|

Rule 4 (B) Ohio

Rules of Civil Procedure

| CPP CLEVELAND, INC., ET AL. | PLAINTIFF |
|---|---|
| VS | |
| IRONSHORE SPECIALTY INSURANCE COMPANY, ET AL. | DEFENDANT |

## SUMMONS

IRONSHORE CLAIMS, LLC
28 LIBERTY ST., 5TH FLOOR
NEW YORK NY 10005

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plantiff's Attorney**

DAVID W MELLOTT
200 PUBLIC SQUARE

SUITE 2300
CLEVELAND, OH 44114-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

STUART A FRIEDMAN
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Aug 30, 2018 |

By _____ Deputy

COMPLAINT FILED 08/29/2018



CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

New Case Electronically Filed:
August 29, 2018 15:57

By: DAVID W. MELLOTT 0019485

Confirmation Nbr. 1480828

CPP CLEVELAND, INC., ET AL.                    CV 18 902995

vs.
                                                Judge: STUART A. FRIEDMAN
IRONSHORE SPECIALTY INSURANCE COMPANY,
ET AL.

Pages Filed: 15

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| **CPP-CLEVELAND, INC., DBA CONSOLIDATED PRECISION PRODUCTS**<br>1621 Euclid Avenue, Suite 1850<br>Cleveland, OH 44115 | ) ) ) ) ) ) | CASE NO.<br><br>JUDGE |
| **CONSOLIDATED PRECISION PRODUCTS CORP.**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | ) ) ) ) ) ) ) | COMPLAINT |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| **IRONSHORE SPECIALTY INSURANCE COMPANY**<br>1111 Superior East Avenue, Suite 1330<br>Cleveland, OH 44114 | ) ) ) ) ) ) | |
| And | ) ) | |
| **IRONSHORE CLAIMS, LLC**<br>28 Liberty St., 5th Floor<br>New York, NY 10005 | ) ) ) ) ) | **(Jury Demand Endorsed Hereon)** |
| Defendants. | ) ) ) | |

For their Complaint against Ironshore Specialty Insurance Company and Ironshore Claims, LLC (collectively, "Ironshore"), CPP-Cleveland, Inc. d/b/a Consolidated Precision Products and Consolidated Precision Products Corp. (collectively, "CPP") states:

1. This case involves an insurance coverage dispute.

## PARTIES

2. Plaintiff CPP-Cleveland, Inc. d/b/a Consolidated Precision Products is an Ohio corporation headquartered in Cleveland, Ohio.

3. Plaintiff Consolidated Precision Products Corp. is a Delaware Corporation.

4. Defendant Ironshore Specialty Insurance Company, a Liberty Mutual company, is a for-profit insurance company headquartered in New York, New York. Ironshore Specialty Insurance Company is regularly engaged in the business of underwriting and selling various insurance policies to insureds in the State of Ohio and has an office located in Cleveland, Ohio.

5. Ironshore Specialty Insurance Company also provides broker-sourced specialty property and casualty insurance coverages for varying risks on a global basis.

6. Ironshore Claims, LLC is the claims administrator for Ironshore Specialty Insurance Company and has its principal offices in New York, New York.

## JURISDICTION AND VENUE

7. Jurisdiction and venue in the Court of Common Pleas of Cuyahoga County, Ohio is proper pursuant to R.C. §2307.382, et seq. and Civ. R. 3 of the Ohio Rules of Civil Procedure.

## FACTUAL BACKGROUND

### The Ironshore Policies

8. CPP is an insured under policies providing general and environmental liability insurance issued by Ironshore.

9. Specifically, Ironshore issued an Environmental Protection Insurance Coverage Package policy insuring CPP. The policy number is 001252604 for the policy period of December 30, 2015 through December 30, 2016 (the "Ironshore EPIC Policy").

10. Ironshore also issued an Environmental Excess Liability policy insuring CPP. The policy number is 001252704 for the policy period of December 30, 2015 through December

30, 2016 (the "Ironshore Excess Policy"). Collectively, the Ironshore EPIC Policy and the Ironshore Excess Policy are referred to as the "Ironshore Policies." The Ironshore Policies are already in Ironshore's possession and are not attached to this Complaint. The Ironshore Policies are incorporated herein by reference.

11. The Ironshore Policies state, in part, that:

   a. Ironshore "will have the right and duty to defend the insured against any **suit** seeking damages for **bodily injury, property damages or environmental damage** to which any of **Coverages A through G** applies."

   b. Ironshore "will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies arising out of a **time-element pollution incident** on, at, under or migrating from any **location** which is owned or occupied by you which is not specifically scheduled as an insured site but only if:

   c. The **bodily injury** or **property damage** is caused by an occurrence that takes place in the **coverage territory**;

   d. The **bodily injury** or **property damage** takes place during the **policy period**;

   e. The insured discovers the **pollution incident** within ten (10) days of commencement of the **pollution incident**; and

   f. The **pollution incident** is reported to us in writing within thirty (30) days of commencement of the **pollution incident**."

12. Ironshore defines **Time-Element pollution incident** as "a **pollution incident** demonstrable as having first commenced at an identified time and place during the policy period provided: (a) Such **pollution incident** does not originate or arise from, or relate to an

underground storage tank; and (b) Such **pollution incident** is not (i) heat, smoke or fumes from a hostile fire or (ii) solely with respect to **bodily injury**, smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests."

13. The Ironshore Policies further state that Ironshore will "pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage** or **environmental damage** to which this insurance applies arising out of a **pollution incident** caused by **your work** but only if:

    a. The **bodily injury, property damage** or **environmental damage** is caused by an **occurrence** that takes place in the coverage territory; and

    b. The **bodily injury, property damage** or **environmental damage** takes place during the **policy period**.

14. "**Your work**" is defined as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

## The Underlying Injuries

15. An outbreak of Legionnaires' Disease occurred in the summer of 2016 in Eastlake, Ohio.

16. Legionnaires' Disease is caused by the bacteria *Legionella pneumophilia*. Legionella are omnipresent and are found in almost all surface and ground water.[1]

17. Legionella can survive most municipal chlorine treatments.[2]

---

[1] https://www.cdc.gov/media/releases/2018/p0517-swimming-related-diseases.html
[2] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4070956/

18. Legionella is sometimes present in water supplies without causing disease, so routine testing and obtaining positive test results do not mean that Legionnaires' Disease will occur.[3]

19. Legionella are living organisms and not solid, liquid, gaseous, or thermal substances.[4]

20. The infectious dose for Legionella in humans is unknown.[5]

21. In fact, most industry and health organizations have noted the lack of correlation between the amount of Legionella present and the risk of contracting Legionnaires' Disease.[6]

22. Thus, when such an outbreak takes place, the source of the bacteria can be difficult to identify.[7]

23. In August and September 2016 the Lake County Health Department, Occupational Safety and Health Administration and the Ohio Department of Health ("ODH") began investigating the outbreak of Legionnaires' Disease in Eastlake, Ohio. CPP was one of several businesses in Eastlake, Ohio that was investigated as a potential source of the Legionella bacteria.

24. From late August 2016 through November 8, 2016, numerous tests were conducted by CPP of its water systems for Legionella bacteria. All test results were negative for Legionella bacteria.

25. On or about November 8, 2016, CPP was ordered by the ODH to cease operations of its cooling towers located at 3400 Lakeland Blvd, Eastlake, Ohio (the "Eastlake Plant") and to

---

[3] https://www.epa.gov/sites/production/files/2015-10/documents/legionella-report.pdf
[4] *Westport Insurance Corp. v. VN Hotel Group, LLC*, 761 F. Supp. 2d 1337, 1343 (M.D. Fla. 2010)
[5] http://www.who.int/water_sanitation_health/dwq/admicrob4.pdf
[6] https://www.specialpathogenslab.com/news-and-events/post.php?s=2013-07-03-seven-misconceptions-about-legionella
[7] https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=OFFICE_STATIC&p_id=36957&p_search_type=CLOBTEXTPOLICY&p_search_str=legionnaires&p_text_version=FALSE#3

clean those towers. ODH also instructed CPP to conduct pre-cleaning testing of the cooling towers. This was the first notice to CPP that a potential "pollution incident" had occurred under the Ironshore Policies then in effect.

26. That same day, CPP timely notified Ironshore about potential claims related to Legionella and requested coverage under the Ironshore Policies because the Eastlake Plant is an insured location covered under the Ironshore Policies.

27. CPP conducted the pre-cleaning testing on November 9, 2016 and received the test results on November 14, 2016 confirming the presence of Legionella bacteria in the biofilm in one of CPP's cooling towers. CPP updated Ironshore on the potential claims related to Legionella on November 17, 2016.

28. In February and March of 2017, lawyers for William Moon and Anthony Washington alleged that in or around August 2016, Mr. Moon and Mr. Washington contracted Legionnaires' Disease after being in proximity to (but not at) the Eastlake Plant. CPP timely and properly notified Ironshore of these letters. Mr. Moon and Mr. Anthony's lawsuit followed in July 25, 2018 alleging harm and damages from contracting Legionnaires' Disease, *Washington, et. al, v. Consolidated Precision Products, Corp. et al.*, Cuyahoga County Court of Common Pleas, case number CV 18 901222 (the "Lawsuit"). CPP is one of several defendants. CPP has tendered the Lawsuit to Ironshore for defense and indemnity.

### Ironshore's Denial of Coverage

29. Despite CPP's procurement of and payment for the Ironshore Policies, Ironshore has wrongfully denied CPP coverage under the Ironshore Policies.

30. Ironshore has stated at least three reasons for denying coverage.

31. First, Ironshore argues that any issues stemming from Legionnaires' Disease/Legionella are not covered because Ironshore considers this a **"pollution incident"**

resulting solely from fumes or vapors produced by equipment. *See* paragraph 12, definition of **time-element pollution incident**.

32. CPP's position, however, is that the potential toxic agent that would cause Legionnaires' Disease is bacteria--not fumes or vapors.

33. In support of its position, CPP has pointed out that Ironshore's own definition of "pollutant" includes "electromagnetic field, mold matter, and legionella pneumophilia."

34. Ironshore would not have included "legionella" in its definition of "pollutant" if Ironshore truly believed that legionella was encompassed within the "fumes" and "vapor" terminology used in its own policy.

35. Since Legionella is a "pollutant," then the release of Legionella is a covered **"pollution incident."**

36. Second, Ironshore has denied coverage by alleging that CPP did not report the **"pollution incident"** to Ironshore within 30 days of the start of the **"pollution incident."**

37. The timeline and facts surrounding the Legionnaires' Disease outbreak in Eastlake, Ohio during the summer of 2016 refute Ironshore's position.

38. CPP notified Ironshore of the potential claims the very same day (November 8, 2016) that CPP was informed to cease operation of the cooling towers. This is the first time a **"pollution incident** demonstrable as having first commenced at an identified time and place during the policy period" occurred. CPP timely notified Ironshore the very same day.

39. Third, Ironshore has denied coverage because it claims that CPP's Eastlake Plant was not included on a Site Schedule Endorsement to the Ironshore Policies because no such schedule was attached to the Policy (notwithstanding Ironshore's obligation to attach that schedule). Thus, Ironshore alleges that the Eastlake Plant was not an insured site.

40. In response, however, CPP asserts that the Eastlake Plant is clearly covered because the mutual underwriting intent on the part of Ironshore and CPP was to provide insurance coverage for CPP's owned sites, including the Eastlake Plant.

41. CPP has believed that, and has operated as if, it had obtained site-specific insurance coverage under the Ironshore Policies for its Eastlake Plant.

42. This is evidenced by the underwriting submission to Ironshore that includes location schedules. Item 4 of the Declarations shows a coverage limit of $1 million and a deductible of $25,000 for Site Pollution Incident Legal Liability under Coverage Part III. In addition, Item 8 in the Declarations refers to the Insured Site Schedule that Ironshore was to attach to the policy. Had such coverage not been purchased, then Item 8 would say "Not Purchased" as it does under Item 6 for Premium for Acts of Terrorism.

43. Ironshore also admits that it was "in possession of a list of [CPP's] locations" and that "a limit and deductible are shown in the declarations."

44. Furthermore, since the "**pollution incident**" resulted from "**your work**," there is coverage for the claims under Coverage G. CPP's "work" included its work and operations performed at the Eastlake Plant. The cooling towers were part of CPP's work and operations and constituted part of the "equipment furnished in connection with such work or operations."

45. The plaintiffs in the Lawsuit, Moon and Washington, may qualify for medical payment coverage of up to $25,000 each under Coverage Part II: Miscellaneous Coverages, Coverage C: Medical Payments since both allege to have worked at locations in proximity to the Eastlake Plant. This meets the definition for coverage of incidents "on ways next to premises you own or rent."

46. Ironshore has a duty to defend and indemnify CPP in the Lawsuit, which Ironshore denies.

47. Ironshore further owes CPP a duty of good faith and fair dealing.

48. Ironshore's purported bases for denial of coverage under the Ironshore Policies demonstrate that Ironshore is not acting in good faith.

49. Aon Risk Services Northeast, Inc., the insurance broker of record, agrees with CPP and asserts that it was the parties' intention to include CPP's Eastlake Plant as an insured site under the Ironshore Policies.

50. To date, Ironshore has failed to defend and indemnify CPP from the potential claims related to the Legionnaires' Disease outbreak despite CPP timely making all proper payments to Ironshore.

51. As a result of Ironshore's denial of coverage, CPP has been damaged in the form of out of pocket expenses, costs, and legal fees that Ironshore should be covering, plus interest thereon from when paid.

52. CPP has complied with all relevant terms of the Ironshore Policies. CPP has satisfied all conditions precedent to receive insurance coverage.

53. CPP has taken appropriate steps to mitigate any potential liability.

### First Claim for Declaratory Judgment

54. CPP incorporates the preceding allegations as if fully rewritten herein.

55. Pursuant to the terms and conditions of the Ironshore Policies, CPP is entitled to defense of and indemnification in the Lawsuit.

56. Ironshore has erroneously denied coverage to CPP under the Ironshore Policies.

57. CPP has refuted each of Ironshore's purported reasons for denying coverage, yet Ironshore still refuses to provide CPP with insurance coverage for the Lawsuit.

58. A justiciable controversy exists between CPP and Ironshore.

59. The Ironshore Policies are clear and unambiguous in providing coverage to CPP for the Lawsuit.

60. Declaratory relief is necessary to determine the rights and obligations of the parties.

61. Ironshore's actions have denied CPP the benefit of its bargain.

62. As a result, CPP requests a declaration from this Court that Ironshore must provide insurance coverage to CPP under the Ironshore Policies for the Lawsuit. Specifically, CPP requests a declaration from this Court that Ironshore must defend and indemnify CPP in the Lawsuit.

63. CPP further requests a declaration that Ironshore is liable for CPP's fees and costs in prosecuting this Complaint and vindicating its right to a defense from Ironshore.

64. Pursuant to Ohio Revised Code §2721.11, CPP further requests an award against Ironshore for court costs incurred in seeking this declaratory judgment.

### Second Claim for Breach of Contract

65. CPP incorporates the preceding allegations as if fully rewritten herein.

66. Ironshore has breached the Ironshore Policies by denying coverage to CPP.

67. Ironshore has ignored its own policy language in denying coverage.

68. Ironshore has also ignored well-established case law refuting Ironshore's reasons for the denial of coverage.

69. Ironshore has breached the Ironshore Policies, to CPP's detriment.

70. By refusing to defend CPP, CPP is entitled to recover its legal expenses in establishing its right to a defense.

71. As a result of Ironshore's breach of the Ironshore Policies, CPP has been damaged in the amount of expenses, costs, and fees CPP has had to incur (including those associated with filing and prosecuting this lawsuit) related to the potential claims, plus interest in an amount exceeding $25,000.

72. CPP will continue to be damaged by Ironshore's denial of coverage for the foreseeable future.

73. CPP is entitled to a defense and indemnity under the Ironshore Policies for the Lawsuit.

### Third Claim for Bad Faith

74. CPP incorporates the preceding allegations as if fully rewritten herein.

75. Ironshore has acted in bad faith in denying coverage to CPP.

76. As a result of Ironshore's bad faith coverage denial, CPP has been damaged in the amount of expenses, costs, and fees CPP has had to incur (including those associated with filing and prosecuting this lawsuit) related to the potential claims, plus interest in an amount exceeding $25,000.

77. CPP will continue to be damaged by Ironshore's denial of coverage for the foreseeable future.

78. Ironshore's conduct in arriving at a clearly erroneous coverage determination was in bad faith, willful, in conscious disregard of CPP's rights, and/or committed with malice, entitling CPP to an award of attorneys' fees and punitive damages.

### Fourth Claim for Reformation

79. CPP incorporates the preceding allegations as if fully rewritten herein.

80. Ironshore's position that the Eastlake Plant is not an insured site under the Ironshore Policies does not correctly reflect or memorialize the true understanding of CPP and Ironshore in entering into the Ironshore Policies.

81. If the Eastlake Plant is not considered to be an insured location under the Ironshore Policies as issued, then that resulted from a mutual mistake consisting of Ironshore's failure to attach the Site Schedule Endorsement and CPP's mistaken belief that the Ironshore Policies were complete when issued. The parties did not realize at the time that the Ironshore Policies did not truly reflect their intentions and understanding.

82. Ironshore knew or should have known that CPP intended for the Eastlake Plant to be an insured site. Furthermore, Ironshore knew or should have known that CPP would rely on the Ironshore Policies as issued to include coverage for time-element pollution incidents related to the Eastlake Plant.

83. Based on the mutual mistake of CPP and Ironshore, or alternatively, the unilateral mistake of Ironshore that caused Ironshore's failure, the Ironshore Policies should be reformed to reflect the true intent and understanding of the parties, as set forth in this Complaint and to be established at hearing or trial, namely, that CPP's Eastlake Plant is an insured site under the Ironshore Policies as issued.

WHEREFORE, CPP demands judgment against Ironshore as follows:

A. On the First Claim, a declaration that Ironshore must provide insurance coverage under the Ironshore Policies to CPP for the potential legionella claims, including the obligation to defend and indemnify CPP in the Lawsuit, and an award of the costs CPP has incurred;

B. On the Second Claim, an award in CPP's favor and against Ironshore in the amount of damages that CPP has suffered and will suffer as a result of Ironshore's breach of contract, inclusive of costs and attorneys' fees;

C. On the Third Claim, an award in CPP's favor and against Ironshore in the amount of damages that CPP has suffered and will suffer as a result of Ironshore's bad faith conduct, inclusive of costs and attorneys' fees, together with an award of punitive damages in an amount to deter conduct similar to that of Ironshore;

D. On the Fourth Claim, judgment reforming the Ironshore Policies in accordance with its intended meaning that the Eastlake Plant was an insured location and as otherwise alleged in this Complaint and to be established at hearing or trial; and

E. Any other award or relief that the Court deems appropriate.

Respectfully submitted,

/s/ David W. Mellott
DAVID W. MELLOTT (0019485)
MICHAEL J. MEYER (0087953)
Benesch Friedlander Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
E-mail: dmellott@beneschlaw.com
mmeyer@beneschlaw.com

*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs CPP-Cleveland, Inc. d/b/a Consolidated Precision Products and Consolidated Precision Products, Corp. hereby request a trial by jury on all issues so triable.

/s/ David W. Mellott
DAVID W. MELLOTT (0019485)

## INSTRUCTIONS FOR SERVICE

TO THE CLERK OF COURTS:

Please issue a copy of the Summons and Complaint to all named Defendants in the caption of this Complaint, via certified mail service, return receipt requested.

/s/ David W. Mellott
DAVID W. MELLOTT (0019485)